## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AGAINST JORDAN DUNCAN

1. I, Special Agent John C. Little, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

2. I have been employed as a Special Agent with NCIS since September of 2015. From 2010 through September of 2015, I served as a Special Agent with the United States Department of State Diplomatic Security Service. I am currently assigned to the NCIS Counterintelligence/Counter Terrorism Unit (CI/CT), Camp Lejeune, North Carolina. As part of my duties as an NCIS agent, I investigate federal crimes, including crimes pertaining to the wrongful sale and/or distribution of firearms. As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

### STATUTORY AND REGULATORY BACKGROUND

3. Title 18, United States Code, Section 371 provides that it is a crime for "two or more persons [to] conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and [when] one or more of such persons do any act to effect the object of the conspiracy." 18 U.S.C. § 371.

4. Title 18, United States Code, Section 922(a)(1)(A) and (a)(3) provides that (a)It shall be unlawful—

Page 1 of 8

(1) for any person—

(A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate or foreign commerce

And/or

(3) for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector to transport into or receive in the State where he resides (or if the person is a corporation or other business entity, the State where it maintains a place of business) any firearm purchased or otherwise obtained by such person outside that State.

## STATEMENT OF FACTS

The statements in this Affidavit are based in part on my investigation of this matter and on information provided by other law enforcement agents and professionals in the field. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe Rather, I have set forth only those facts that are believed to be necessary to establish probable cause in support of a criminal complaint charging JORDAN DUNCAN (DUNCAN) with conspiring and agreeing with others to commit offenses against the United States in violation of Title 18, United States Code, Section 922(a)(1)(A) and 922(a)(3), in violation of 18 U.S.C. § 371.

## CASE BACKGROUND

5. On April 14, 2020, a Cooperating Witness (CW) reported Liam Collins, a marine then stationed at Camp LeJeune, North Carolina, had discussed selling "illegal guns" in the past. The CW expressed to Collins that he/she planned to use Covid-19 stimulus money to purchase a Glock handgun from a store in Jacksonville, NC. Collins advised the CW that they should instead purchase a Glock 19 with no serial number and a silencer through an individual that Collins knows.

6. Collins advised the pistol and silencer would cost $1500.00 and stated that the advantage to purchasing a pistol and silencer in this manner is that the government will not know you have it, and you will avoid lengthy wait times for the proper tax stamp. When asked what brand silencer the CW would be receiving, Collins stated that there was no brand and it would be a drill pressed titanium/aluminum silencer. Your affiant believes Collins was indicating that an individual and not a known firearms manufacturer would manufacture the silencer for the CW. Collins told the CW he would assist the CW in attaching the silencer to the pistol when received and indicated it would be shipped from outside of the Camp Lejeune, NC area.

7. Collins also provided the CW a video of a pistol and working silencer being fired into the ground at an unidentified location by an individual with a very distinctive tattoo on their right forearm. The CW believed this is a pistol and silencer Collins personally owns and has referenced in the past. A tattoo visible in the video was utilized to identify the individual firing the weapon as Paul James Kryscuk, a

resident of Boise, Idaho. Collins additionally provided a screenshot of the Venmo account to which the money would be sent for the pistol and silencer. The account was saved as "@P-James, Paul Kryscuk James" under a contact card in the phone belonging to Collins.

8. On April 24, 2020, NCIS conducted a controlled meeting between the CW and Collins. During the meeting, Collins stated that he has made multiple firearms deals with the individual who will be providing the pistol and silencer, completely trusts them, and has known them for years. Collins stated he could get anything the CW wanted to include short barrel rifles and fully automatic weapons from this individual.

9. During the controlled meeting, the CW transferred $1500.00 in NCIS controlled funds via direct bank transfer to Collins in exchange for a Glock model 19 pistol with no serial numbers and a silencer. Collins informed the CW the pistol and silencer could take up to 6 weeks to arrive due to delays related to the Covid-19 pandemic.

10. Financial records indicate that after the CW transferred the NCIS controlled funds to Collins, Collins utilized a direct bank transfer to send the money to another active duty Marine. This active duty Marine then sent the money to Kryscuk via Venmo. Kryscuk transferred the money from his Venmo account to his personal bank account. Shortly after receiving the money, Kryscuk began making purchases from vendors known to sell devices called solvent traps. Solvent traps are easily modified using a drill press to make working silencers. The items available

from these vendors are consistent with what is visible in the video provided to the CW by Collins of Kryscuk firing a pistol and silencer. Information provided by the United States Postal Inspection Service (USPIS) indicates Kryscuk received items from these vendors at his home located at 3897 S. Yorktown Way, Boise, ID on April 30, 2020.

11. Further review of the financial records revealed previous and similar transactions between Kryscuk, Collins, and other individuals, to include Jordan DUNCAN. DUNCAN is a former Marine from Pennsylvania who served at Camp Lejeune, NC from 2013-2018. During the course of this investigation, DUNCAN worked as a Department of Defense contractor working in the intelligence community for the Air Force in San Antonio, TX.

12. Specifically, on April 25, 2020 DUNCAN received $155.00 from his brother Jarod Duncan, resident of San Antonio, Texas, via Venmo. DUNCAN transferred $150.00 to Kryscuk approximately 30 minutes later. The financial records show Kryscuk then made purchases from solvent trap vendors. Records from the USPIS indicate Kryscuk then utilized the alias "Shaun Corcoran" to send a package to "Jerry Seinfield" in San Antonio, TX. The package was sent to the address of DUNCAN's brother, Jarod. Investigators believe the transaction and shipment are for a silencer, coordinated by DUNCAN through Kryscuk. In total, NCIS has identified and inspected approximately 11 packages sent by Kryscuk utilizing the "Shaun Corcoran" alias. All 11 packages, believed coordinated by Collins or

DUNCAN to Kryscuk, contained components of illegally manufactured firearms or silencers.

13. In August 2020, NCIS also conducted and completed an additional controlled purchase of a Short Barrel Rifle (SBR) and silencer from Kryscuk, through Collins. Kryscuk sent the SBR and silencer through the U.S. Mail, as he had the pistols and silencers, and law enforcement intercepted the package on September 11, 2020. Kryscuk appeared to have manufactured the SBR and silencer in the same manner as the previously intercepted pistols. The investigation has also identified multiple other transactions and shipments involving Kryscuk that appear to involve illegally manufactured firearms and silencers.

14. FBI surveillance revealed that DUNCAN traveled to Boise, ID in July 2020, to meet with Kryscuk. DUNCAN drove his personally owned vehicle from San Antonio, and off-loaded numerous boxes, some heavy, into Kryscuk's garage. FBI surveillance identified locations where DUNCAN, Kryscuk, and two other individuals conducted what appeared to be live fire weapons training on multiple occasions while they were together in Boise, ID. At the conclusion of the weekend, law enforcement viewed DUNCAN putting boxes back into his truck, and leaving south for San Antonio once again.

15. On September 6, 2020, DUNCAN packed a U-Haul trailer in San Antonio, and on September 8, 2020, moved to Boise, ID.

16. Collins separated from the Marine Corps on September 20, 2020, and electronic and physical surveillance thereafter observed Collins travel by vehicle from

the Camp Lejeune area, met with persons in New Jersey and Rhode Island who had had similar financial transactions with Kryscuk as explained above, and offload numerous boxes into his father's residence in Rhode Island. Collins flew to Boise, Idaho on October 4, 2020, and has been staying with DUNCAN there. He has been surveilled buying items consistent with a long-term stay, if not for a permanent move, in Boise.

17. NCIS and the FBI have begun review of multiple Apple iCloud accounts returned pursuant to a federal search warrant. The initial review of the accounts indicates the group of individuals identified in this investigation, including Collins, DUNCAN, and Paul Kryscuk, have exchanged monies and messages from at least May 2019 to the present. These messages and money transfers regard the cost of solvent traps in making silencers, jointly provided the funds used to purchase the jigs and equipment necessary to manufacture the silencers and other parts of firearms, and discussed the selling price of the manufactured items.

18. In conclusion, your affiant respectfully submits that there is probable cause to believe DUNCAN has participated in a conspiracy involving the illegal manufacture and trafficking of firearms in violation of 18 U.S.C. § 371 (Ref. 18 U.S.C. §§ 922(a)(1)(A) and (3)).

## CONCLUSION

19. Based on my knowledge, training and experience, and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe Jordan DUNCAN committed violations of Title 18, United States Code, Section 371.

*[signature]*

John C. Little
Special Agent
Naval Criminal Investigative Service

Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.

This __19__ th day of October 2020.

*[signature]*
ROBERT B. JONES, JR.
UNITED STATES MAGISTRATE JUDGE